TRACY, Cross-Appellant v. T & B CONST. CO. et al.,
Appellant and HUGHES et al., Respondents v. GENERAL
INS. CO. OF AMERICA, Appellants

(182 N.W.2d 320)

(File Nos. 10705, 10706. Opinion filed December 18. 1970)

**Bangs, McCullen, Butler, Foye & Simmons,** Rapid City, for defendant and appellant and third party defendants and appellants.

**Wilson, Gunderson & Olson, James H. Wilson,** Rapid City, for plaintiff and cross-appellant.

**George Beal,** Rapid City, for defendants and third party plaintiffs and respondents.

HOMEYER, Judge.

The single question presented for decision by these appeals is whether respondents, Victor H. and Evelyn Hughes, the obligees named in a contractor's performance bond, can recover attorney's fees from appellant, General Insurance Company of America, in an action on the bond.

A somewhat complex and involved piece of litigation which we briefly summarize gives rise to the issue presented. On February 21, 1967, the Hughes entered into a written contract with the appellant, T & B Construction Company, for construction of a home on a site owned by the Hughes. To meet requirements of a bank financing the construction, the Hughes procured a private construction bond for the amount of the contract price from General.[1] The bond was executed by T & B as principal and General as surety. The Hughes paid the premium.

As the house neared completion, it became apparent to the Hughes that the subconstractors had not all been paid.

---

1. The bond provided "that if the Principal shall indemnify the Obligee against any loss or damage directly arising by reason of the failure of the Principal to faithfully perform said contract, then this obligation shall be void; otherwise to remain in full force and effect."

Correspondence between the parties reflects this knowledge by all parties as early as September 8, 1967, and subsequent repeated requests for payment and lien releases or waivers.

On February 14, 1968, Lewis W. Tracy, d/b/a Tracy Masonry and three other subcontractors commenced an action to foreclose mechanics liens totaling $15,208.69 on the Hughes' property. Defendants in the action were the Hughes, the mortgagee bank financing the construction, seven other subcontractors holding purported mechanics liens, and T & B.

The seven subcontractors answered and cross-claimed for foreclosure of their respective mechanics liens. Thereafter, the Hughes answered and also filed a third party complaint against General among other things alleging the execution of the bond and liability to Hughes for all sums found to be due plaintiffs and other lien claimants joined as defendants "together with reasonable attorney's fees and costs resulting from the defendant, T & B Construction Company, failing to perform its contract" with the Hughes and for damages for defective construction.

T & B answered the plaintiffs' complaint and cross-claimed against the Hughes claiming substantial performance and extras owed of $34,617.84, or alternately, an abandonment of the contract and $42,665.37 as the sum remaining due for the resonable value of the construction. General answered the Hughes' third party complaint and affirmatively alleged that they had materially changed the contract to the prejudice of General and sufficiently to discharge the bond. General as an affirmative defense also realleged the allegations in the answer and cross-complaint of T & B and asked that the third party complaint be dismissed with costs. Other responsive pleadings by various parties were also served as well as written interrogatories and requests for admissions.

In this posture the action was tried to the court on September 4, 5, 6, 23, 24 and 25, 1968. The court made its decision consisting of findings of fact and conclusions of law and entered judgment on February 21, 1969. Essentially the

court decided in favor of the Hughes[2] and the lien claimants[3] on the disputed items and against T & B and General on their contentions. All parts of the judgment have now been settled and paid except the allowance of attorney's fees to the Hughes.

 Ordinarily the terms "cost" and "expenses" as used in a statute are not understood to include attorney's fees and the court may allow attorney's fees as costs for or against any party to an action only in cases where specifically provided by statute. SDCL 15-17-7. At common law the right to recover attorney's fees from an opponent in litigation did not exist. In the absence of a statute or rule of court or some agreement expressly authorizing taxing of attorney's fees in addition to ordinary statutory costs, such an item of expense is not allowable. 20 Am.Jur.2d, Costs, § 72; Dodds v. Bickle, 77 S.D. 54, 85 N.W.2d 284.

In actions involving insurance companies our legislature long ago adopted a policy to permit attorney's fees to be taxed as a part of a plaintiff's costs.[4] In Hight v. Maryland Inc. Co., 69 S.D. 320, 10 N.W.2d 285, referring to the statute, this court said "the court * * * was justified in allowing * ** a reasonable attorney fee to be taxed as part of the costs."

Appleman in his treatise on Insurance Law and Practice, § 1601, wrote:

---

2. Conclusion VI: "That the construction contract entered into between the Hughes' and T & B Construction Company was not materially changed in its scope and all claims for additional compensation for extras or work performed in excess of the contract scope by T & B Construction Company against the Hughes' is denied, with the exception * * *." The court found the amount owed by the Hughes for extras was $3,064.22, virtually all of which they conceded long before trial. It also found they were entitled to damages, offsets and credits totalling $8,787.01, leaving a balance due them of $5,721.99.

3. The judgment for various lien claimants totaled $27,045.51. There was no dispute on five of the liens, and little dispute on three others. The only serious dispute involved the lien claimed by Tracy, a masonry subcontractor.

4. Ch. 162, S.L.1903, § 9201, Rev.Code 1919, SDC 31.2213. This statute was repealed by S.L.1966, Ch. 111, now SDCL Title 58.

"A state may impose upon an insurance company, as a condition of doing business within the state, the obligation to pay damages and attorney's fees in case of default in the payment of their policies. Such provisions, if reasonable, are not unconstitutional. And it is reasonable to classify insurance contracts separately from other contracts as respects recovery of such items."

See also Hardware Mut. Ins. Co. of Minnesota v. Jacob Hieb, Inc., 8 Cir., 146 F.2d 447.

SDCL 58-12-3 reads:

"In all actions hereafter commenced against any insurance company, including any reciprocal or inter-insurance exchange, on any policy or certificate of **any type or kind of insurance,** if it appears from the evidence that such company or exchange has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, the court, if judgment is rendered for plaintiff, shall allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs, provided, however, that when a tender is made by such insurance company or exchange before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender, no such costs shall be allowed."

 In their brief, General and T & B take the position this statute does not authorize the recovery of attorney's fees in an action on a contractor's bond. We do not agree.

The Insurance Code adopted in 1966 is replete with definitions among which are the following:

SDCL 58-1-2(1): " 'Insurance' is a contract whereby one undertakes to indemnify another or pay or provide a specified or determinable amount or benefit upon determinable contingencies.

SDCL 58-1-2(2): " 'Insurer' includes every person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance."

SDCL 58-1-4: "Provisions of this title relative to a particular kind of insurance or a particular type of insurer or to a particular matter shall prevail over provisions relating to insurance in general or insurers in general or to such matter in general."

SDCL 58-1-3 makes the Insurance Code applicable to all insurers except (1) Fraternal and benefit societies, except as stated in chapter 58-37, and (2) Bail bondsmen, other than corporate sureties and their agents, except as stated in chapter 58-22.

SDCL 58-9-29 to 58-9-32, inclusive, define the term "Surety insurance". In SDCL 58-9-31, it is defined to include "insurance guaranteeing the **performance of contracts,** other than insurance policies, **and guaranteeing and executing bonds,** undertakings, and **contracts of suretyship.**"

In our opinion the legislature clearly and unequivocally by the foregoing statutes defined an indemnitor and surety as an insurer and placed them within the purview of SDCL 58-12-3, which reads "In all actions * * * against any insurance company * * * on any policy or certificate of any type or kind of insurance." Thus, when certain essential prerequisites have been established, the court is authorized to allow the plaintiff a reasonable sum as attorney's fees as part of his costs.

Kansas has a similar statute. K.S.A. 40-256 as amended. The legislature of that state encountered no difficulty in embracing within the term "any insurance company" contracts of indemnity and suretyship. K.S.A. 40-201. The courts in that state have consistently permitted attorney's fees to be taxed as a part of the costs in actions on bonds. Russell v. Phoenix Assurance Co. of New York, 188 Kan. 424, 362 P.2d 430; Logsdon v. Phoenix Assurance Company of New York, 188 Kan. 423, 362 P.2d 431; Thompson Transport Company v. Middlestates Construction Company, 194 Kan. 52, 397 P.2d 368, on rehearing 195 Kan. 172, 403 P.2d 999. A performance

bond executed by a commercial surety company for a building contractor is recognized generally as being in the nature of an insurance contract. Massachusetts Bonding & Ins. Co. v. Ray Dilschneider, Inc., 8 Cir., 203 F.2d 556. See also Camdenton Consol. School Dist. v. New York Casualty Co., 340 Mo. 1070, 104 S.W.2d 319.

 The question of whether an insurer's refusal to pay is vexatious or without reasonable cause is necessarily one of fact and whether attorney's fees are to be allowed must depend on the facts and circumstances of each particular case. In the case at bar the trial court found that General's failure and refusal to pay was vexatious or without reasonable cause. Although General has not argued the point, a review of the record satisfies us there is ample support for this finding.

The Hughes in their brief ask that the case be remanded to the trial court for a finding of additional attorney's fees incurred by them in processing the appeal. The statute does not expressly provide for attorney's fees on appeal. In our opinion under the facts and circumstances of this case the request should be denied. See Attebery v. M. F. A. Mut. Insurance Company, 191 Kan. 178, 380 P.2d 327.[5]

Judgment affirmed.

All the Judges concur.

---

5. K.S.A. 40-256 was amended, L.1967, Ch. 257, § 1, to include proceedings upon appeal.