1997 SD 45

Kathy J. HOWIE, Appellant,

v.

**PENNINGTON COUNTY and American States Insurance and Western Casualty and Surety, Appellees.**

No. 19824.

Supreme Court of South Dakota.

Considered on Briefs March 27, 1997.

Decided April 23, 1997.

William Jason Groves, Groves & Julius, Rapid City, for appellant.

John J. Delaney, Estes, Porter & Delaney, Rapid City, for appellees.

AMUNDSON, Justice.

[¶ 1.] Kathy J. Howie (Howie) filed a petition for attorney fees against Pennington County (County), American States Insurance and Western Casualty and Surety (collectively referred to as Insurers). The Department of Labor (Department) denied Howie's claim, and the trial court affirmed. We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] In 1987, Howie was diagnosed as suffering from bilateral carpal tunnel syndrome, reflex sympathetic dystrophy, and Raynaud's Phenomenon. These injuries resulted from working as a Deputy County Auditor for County. She underwent a variety of medical treatments in an attempt to reduce the pain and numbness in her hands. Dr. Steven K. Goff, a physiatrist, recommended hydrotherapy, asserting such treatment would best prevent her condition from further deteriorating.

[¶ 3.] In order to receive weekly hydrotherapy, Howie had to pay a driver to take her to and from the Black Hills Rehabilitation Hospital pool. Eventually, Dr. Goff determined a home spa would be more effective than the pool therapy. No contrary medical opinions were offered.

[¶ 4.] Various disagreements ensued between Insurers and Howie. As a result, administrative hearings were held in March and April of 1992 in order to determine the amount of workers' compensation to which Howie was entitled. Department entered an order in favor of Howie, except for one issue on which Howie appealed. This Court, in *Howie v. Pennington County*, 521 N.W.2d 645 (S.D.1994) (*Howie I*), reversed and remanded for a determination of whether in-

door placement of a hydrotherapy spa was medically necessary.[1]

[¶ 5.] On October 2, 1992, Howie filed a petition for attorney fees pursuant to SDCL 58-12-3, in the amount of $116,632, alleging that Insurers' conduct in forcing her to trial on her permanent total disability claim was unreasonable or vexatious. Department determined that Howie was not entitled to attorney fees, and the trial court affirmed. She appeals the trial court's decision.

## STANDARD OF REVIEW

[¶ 6.] The standard of review applied to administrative appeals is well established:

> We will overrule an agency's findings of fact only when they are clearly erroneous. The question is not whether there is substantial evidence contrary to the agency finding, but whether there is substantial evidence to support the agency finding. In other words, even if there is evidence in the record which tends to contradict Department's factual determination, so long as there is some "substantial evidence" in the record which supports Department's determination, this court will affirm. Great weight is given to the findings made and inferences drawn by an agency on questions of fact. Conclusions of law are given no deference and are fully reviewable. When reviewing evidence presented by deposition, we do not apply the clearly erroneous standard but review that testimony as though presented here for the first time.

*Hendrix v. Graham Tire Co.*, 520 N.W.2d 876, 879 (S.D.1994) (citations and quotations omitted). Further, the determination as to whether the insurer's conduct was vexatious or without reasonable cause is a question of fact and will not be reversed unless it is clearly erroneous. *Tri–State Co. of Minn. v. Bollinger*, 476 N.W.2d 697, 702 (S.D.1991); *American Family Mut. Ins. Co. v. Merrill*, 454 N.W.2d 555, 560 (S.D.1990); *Ewalt v. Mereen–Johnson Mach. Co.*, 414 N.W.2d 28, 31 (S.D.1987); *All Nation Ins. Co. v. Brown*, 363 N.W.2d 216, 217 (S.D.1985); *Johnson v.*

---

1. The parties ultimately settled on this issue.

*Skelly Oil Co.*, 359 N.W.2d 130, 135 (S.D. 1984).

## DECISION

■ [¶ 7.] Howie argues she is entitled to attorney fees under SDCL 58–12–3, which states:

> In all actions or proceedings hereafter commenced against any employer who is self-insured, or insurance company, including any reciprocal or interinsurance exchange, on any policy or certificate of any type or kind of insurance, if it appears from the evidence that such company or exchange has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, the Department of Labor, the trial court and the appellate court, shall, if judgment or an award is rendered for plaintiff, allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs, provided, however, that when a tender is made by such insurance company, exchange or self-insurer before the commencement of the action or proceeding in which judgment or an award is rendered and the amount recovered is not in excess of such tender, no such costs shall be allowed. The allowance of attorney fees hereunder shall not be construed to bar any other remedy, whether in tort or contract, that an insured may have against the same insurance company or self-insurer arising out of its refusal to pay such loss.

Howie claims that, pursuant to this statute, Insurers acted unreasonably by insisting a hearing be held when there was no medical dispute as to the permanency of Howie's injuries. Specifically, she notes there was no medical testimony contrary to the finding that Howie's disability was permanent. Further, she asserts Insurers were aware that contesting her claim was useless.[2]

[¶ 8.] Insurers respond, arguing Howie's reliance on SDCL 58–12–3 is misplaced, as it refers only to insurers who have unreasonably refused to pay the full amount of the claimant's loss. Since Howie has received all amounts to which she is entitled, Insurers assert SDCL 58–12–3 is inapplicable.[3] Further, Insurers point out that other issues were in dispute which gave reason for the administrative hearings. Insurers also contend that a hearing was necessary to challenge the facts upon which the doctors based their opinions.

[¶ 9.] Department found that Insurers' conduct was neither vexatious nor unreasonable. Specifically, it noted that Insurers disputed whether Howie's condition was permanent, whether a home spa was a necessary medical expense, and whether a lump-sum distribution was in Howie's best interest. Department then noted that, when questions of fact exist, the insurer may request a judicial determination of such questions without acting vexatiously. Department ultimately concluded there were facts which would reasonably cause Insurers to resist Howie's claims.

■ [¶ 10.] We therefore determine whether Department was clearly erroneous in finding Insurers did not act in a vexatious or unreasonable manner in resisting Howie's

---

2. Howie asserts that, since there was no medical dispute as to the permanency of Howie's injuries, hearings on the issue were unnecessary. However, there were at least four issues argued before Department. In fact, this Court, in *Howie I*, restated the issues Department addressed:

> Department held administrative hearings on March 3, 1992, and April 28, 1992, to determine whether Howie was entitled to permanent total disability benefits, whether a lump-sum payment of those benefits should be given, whether a Grandee model home spa should be awarded, and whether an addition to her house to enclose the spa should be allowed.

521 N.W.2d at 646. This is clear evidence that Department was presented with more issues than simply whether Howie was entitled to permanent

total disability benefits. Howie responds by arguing that such a linking of claims is contrary to the legislative intent of SDCL 58–12–3, as it would require hearings on all permanent total disability claims so long as any other issue exists. However, Howie fails to acknowledge that, according to SDCL 62–7–6, there is no automatic entitlement to a lump-sum payment, one of the issues involved. Thus, Department must approve such an award via hearing.

3. Pursuant to *Watertown v. Dakota, Minn. & E.R.R.*, 1996 SD 82, ¶ 26, 551 N.W.2d 571, 577, we need not address this issue because the trial court did not address it, and we do not address issues for the first time on appeal.

claim. *Tri–State Co. of Minn.*, 476 N.W.2d at 702; *American Family Mut. Ins. Co.*, 454 N.W.2d at 560; *Ewalt*, 414 N.W.2d at 31; *All Nation Ins. Co.*, 363 N.W.2d at 217; *Johnson*, 359 N.W.2d at 135. In doing so, we look for evidence which supports Department's findings. *All Nation Ins. Co.*, 363 N.W.2d at 217; *see also American Family Mut. Ins. Co.*, 454 N.W.2d at 560. As we stated in *Fenner v. Trimac Transp., Inc.*, "We do not look for reasons to reverse, even if we would not have made a similar decision, but confine our review to a determination whether the record contains substantial evidence to support the agency's decision." 1996 SD 121, ¶ 15, 554 N.W.2d 485, 489 (citation omitted). We are also reminded that the determination as to whether the insurer engaged in vexatious or unreasonable conduct depends on the facts of each particular case. *Johnson*, 359 N.W.2d at 135 (citing *Tracy v. T & B Constr. Co.*, 85 S.D. 337, 182 N.W.2d 320 (1970)).

[¶ 11.] The general rule is "a failure to pay because of a good faith belief that no payment is due will not warrant a penalty [for unreasonable nonpayment of compensation.]" Larson's Workmen's Compensation Law § 83.41(b)(2) (1996). Although states' prerequisites vary for an imposition of such a penalty, the main inquiry is whether the insurer acted in good faith. For example, in *All Nation Ins. Co.*, we stated: " 'Where there [are] open question[s] of fact or law determinative of the insured's liability, the insurer, acting in good faith, may insist on judicial determination of such questions without subjecting itself to penalties for vexatious refusal to pay.' " 363 N.W.2d at 218 (quoting *Taylor v. Commercial Union Ins. Co.*, 614 F.2d 160, 165 (8th Cir.1980) (other citations omitted)). Furthermore, " 'if there is a bona fide and reasonable factual ground for contesting the insured's claim, there is no failure to pay "without just cause or excuse." ' " *Id.* (quoting *St. Francis Hosp. v. Baldwin*, 6 Kan.App.2d 124, 626 P.2d 1229, 1232 (1981)).

[¶ 12.] Department determined "[Insurers] had facts before [them] which would lead a reasonable insurer to resist [Howie's] claims." The factual disputes concerned whether Howie's condition is permanent, and whether the home spa and addition to her home are a medical necessity. It also found that Insurers relied on observations of a private investigator to provide a reasonable basis for Insurers to question Howie's credibility. The investigator reported instances in which Howie demonstrated abilities "markedly different" from those relayed to Insurers.[4] Insurers could easily conclude from such a report that Howie's condition was "stabilizing and capable of improvement."

[¶ 13.] Each of these findings by Department was supported in the record. Insurers had a reasonable basis on which to request a hearing, including factual disputes regarding the permanency of Howie's injuries. *See, e.g., Tri–State Co. of Minn.*, 476 N.W.2d at 702 (interpreting *American Family Mut. Ins. Co.*, 454 N.W.2d at 555, stating that an insurer is allowed to seek a determination of coverage); *All Nation Ins. Co.*, 363 N.W.2d at 218 (stating a reasonable factual ground for disputing liability prevents a finding of vexatious conduct). Especially important to Insurers was the issue of Howie's credibility. *See, e.g., Marnette v. Morgan*, 485 N.W.2d 595, 598 (S.D.1992) (stating that disability ratings account for "personal, social, or occupational demands") (citing *Cozine v. Midwest Coast Transp., Inc.*, 454 N.W.2d 548, 552 (S.D.1990)). In addition, the credibility of two experts was examined, as the parties submitted expert testimony regarding whether there was conduct on the part of Insurers which would constitute vexatious or unreasonable refusal to pay the loss. An attorney who practices a fair amount of workers' compensation law testified at the hearing in support of Insurers decision to request the original administrative hearings. He stated that there were complex issues in this case which caused a hearing to be a reasonable demand

---

4. The following discrepancies resulted from the investigator's report: 1) Howie's husband indicated she was barely capable of pushing a grocery cart, while the investigator observed her handling the cart with ease; 2) Howie's husband claimed she could not lift sacks above waist level, but the investigator noted her ability to lift sacks above shoulder level; 3) despite claiming she could stand no more than three pounds of pressure on her hands, Howie was seen lifting sacks of potatoes, twelve-packs of soft drinks, and cartons of milk.

by Insurers. Department found the position of Insurers to be more credible after hearing this testimony, and it is noted that the same hearing officer for Department tried both the underlying cause of action and the cause of action addressed on this appeal. As we have stated numerous times, we defer to Department for a determination of the credibility of each witness. *Petersen v. Hinky Dinky*, 515 N.W.2d 226, 235 (S.D.1994).

[¶ 14.] This is not a case where Insurers claim the employee is entitled to no benefits, but is a case where the dispute revolves around the amount of benefits to be paid and whether there should be a lump-sum payment. To hold that an insurer acted in bad faith or vexatiously in exercising its right to a hearing on a dispute such as is involved in this case would certainly have a chilling effect on a person's right to request a decision from Department on legitimate disputes over amounts due. Further, Insurers were making payments to Howie while the contested issues were being litigated.

[¶ 15.] Having found substantial evidence to support the trial court's conclusion that Insurers were not vexatious or unreasonable in having a hearing in this case, we affirm.

[¶ 16.] MILLER, C.J., and SABERS, KONENKAMP and GILBERTSON, JJ., concur.

